IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| MICHAEL CRAWFORD | § | |
| VS. | § | CIVIL ACTION NO. 9:20-CV-20 |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, *et al.*, | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Michael Crawford, an inmate formerly confined at the Polunsky Unit with the

Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se* and *in*

*forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants TDCJ,

UTMB, Warden Michael J. Butcher, Senior Practice Manager Anitra Lindley, Former Facility

Medical Director James Geddes, Mental Health Clinician Jeanette Harden, Mental Health Clinician

Anthony Freeman, Sergeant of Correctional Officers Ricardo Villafuerta, Correctional Officer IV

Kimberly Williams, and Unit Grievance Investigator III Ashley L. Stephenson.

The above-styled action was referred to the undersigned magistrate judge pursuant to 28

U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge

for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Procedural Background

Plaintiff filed his Original Complaint on February 5, 2020 (doc. # 1). Plaintiff offered no

details regarding his claims on the form complaint, merely attaching and referencing his grievances.

Plaintiff provided few factual details supporting his legal claims against the individual Defendants.

It appeared Plaintiff's complaints stemmed from two attempted suicides sometime in April of 2019.

On March 11, 2020, Plaintiff was ordered to replead, asking Plaintiff to answer the following questions and to conform to the following parameters (doc. # 8):

1.  Please provide a short and plain statement describing the facts of your case.  Specifically, what happened, where did it happen, when did it happen, and who was involved.  Describe how each defendant was personally involved in the alleged constitutional violation(s).

2.  Do not rely on the attached grievances as the short and plain statement of your claim.

3.  If you are asserting different incidences relating to the defendants, state so, and outline the defendants in that incident and their personal involvement in any alleged constitutional violation(s).  Be specific as to each incidence as outlined in Number 1 above.

Plaintiff responded on April 14, 2020, with a Notice of More Definitive Statement (doc. # 11), a Response to this Court's Order to Replead in Addition to Plaintiff's Notice of More Definitive Statement (doc. # 12) and a Notice (doc. # 13).  The Notice contained numbered lines that was missing pages as noted by Plaintiff on page 6.[1]  In addition, very little of the information provided factual details against the individual Defendants.  In the Response to this Court's Order to Replead, it appeared Plaintiff was attempting to amend his complaint and add claims pursuant to the ADA and RA.  The Notice was nonsensical and, at times, contained delusional and fanciful ideations.

In light of the foregoing, the undersigned held a *Spears* Hearing pursuant to *Spears v. McCotter*, 766 F.2d 169 (5th Cir. 1985) on April 26, 2022, in order to give Plaintiff the opportunity to fully develop the factual basis of his claims (doc. # 34).  The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the

---

[1]Plaintiff noted in his response to the Order to Replead that he failed to include pages 2 through 4 out of 8 pages total.  It is unclear why Plaintiff did not include these pages.

claim." *Id*. at 180.  The hearing is "in the nature of a motion for more definite statement."  *Id*. at 180-181.

Plaintiff testified as to the factual basis of his claims.  Dr. Montey Smith with the University of Texas Medical Branch and Warden Anthony Newton with the Ramsey Unit attended the hearing but ultimately did not provide any testimony relevant to these proceedings.

<u>Spears Hearing</u>

Plaintiff testified that since the age of 7 years old, he has been treated for bi-polar disorder, anxiety, post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD") and manic depression.  Plaintiff stated he filed a motion to stay this proceeding and numerous requests for appointment of counsel as he has not been on any medication and feels like he is incompetent to represent himself going forward.  The undersigned informed Plaintiff that the hearing would proceed and asked Plaintiff to answer to the best of his ability.  Much like his written pleadings, Plaintiff's testimony was not a model of clarity.

Plaintiff confirmed that he sued several individual Defendants, TDCJ and UTMB relating to their alleged deliberate indifference to his serious medical needs as it relates to his two attempts at suicide in April of 2019.  Plaintiff stated he intended to amend his complaint to add claims of retaliation and denial of access to courts in addition to claims pursuant to the Americans with Disabilities Act ("ADA").

With respect to his ADA claims, Plaintiff testified that both TDCJ and UTMB have put barriers forward to deny him access to mental and medical health care.  Pursuant to *"Tenneessee v. Laine,"*[2] Plaintiff alleged he has been denied mental health services under the Texas Administrative

---

[2]Plaintiff provided no citation.

Code, specifically medication.[3]  According to Plaintiff, when he filed this complaint, he was complaining about not receiving medication for his mental illness(es) and because of this maltreatment, it is his belief he is being denied his right of access to courts.

Plaintiff testified further that he believes TDCJ failed to follow suicide prevention policy as dictated by the Texas Administrative Code on April 17, 2019, the first day he attempted suicide. When asked of other incidences, Plaintiff stated he believed TDCJ failed to follow policy relating to a March 25, 2019 life endangerment investigation at the Polunsky Unit.  Plaintiff confirmed, however, that as a result of the investigation he was moved to the Michael Unit two years ago.

With respect to UTMB, Plaintiff could not specify a specific policy he alleges was not followed.  He testified it was his belief that because UTMB failed to follow the ADA, his access to courts was being impeded.  Plaintiff could not provide specifics, however, testifying he needed counsel to assist him in making this claim.

Plaintiff then testified that because he is not being treated correctly for his mental illness by UTMB, he has been prevented from filing his state application for writ of habeas corpus and § 2254 federal petition.  Plaintiff confirmed he has not yet filed a state application for writ of habeas corpus but has exhausted his state appeal as he had counsel on appeal.  According to Plaintiff, his Petition for Discretionary Review ("PDR") was denied on June 18, 2019.  Plaintiff then stated he wrote the Clerk of Court for the Fifth Circuit Court of Appeals and informed them he is not on his medication and was trying to get "stable."  Plaintiff confirmed the large stack of material he brought with him to the hearing related to his state application for writ of habeas corpus.  When asked why he chose

---

[3]Plaintiff stated TDCJ is failing to follow the Texas Administrative Code and it is his belief that the Texas Administrative Code parallels the ADA.

4

to file a § 1983 complaint rather than a state application for writ of habeas corpus after compiling all the information, Plaintiff stated he could not file the state application until he received adequate medical care.  Plaintiff testified that pursuant to *Ruiz v. Estelle*,[4] he believes his medical condition deters and inhibits him from filing his state application for writ of habeas corpus and that it was his hope that through this § 1983 complaint he could get counsel to represent him.

As to his claims against Defendant Butcher, Plaintiff testified that he sued Defendant Butcher because he was the acting Warden during the time at issue.  Plaintiff asserted he wrote several letters to Defendant Butcher informing him that due to his mental and medical issues, Plaintiff could not get access to courts.  When asked if Defendant Butcher responded, Plaintiff testified he did not.

Plaintiff testified he believed Defendant Lindley was the practice manager at the Polunsky Unit.  When asked what his allegations against Defendant Lindley were, Plaintiff appeared to complain that she did not timely schedule his medical appointments to UTMB Galveston.  When asked to provide more specifics, Plaintiff stated he could only do so with the assistance of counsel and discovery.

Plaintiff testified he listed Dr. Geddis as a Defendant as he was involved in Plaintiff's medical treatment for colitis.  Plaintiff testified he had to "suffer through pain" due to his colitis and he never associated Dr. Geddis with his mental health treatment.  Plaintiff explained that he was dissatisfied with Dr. Geddis as he prescribed an antacid and another prescription medication that caused him to lose a lot of weight and did not minimize the pain he suffered from colitis.  According to Plaintiff, he had to wait from November of 2018 to August or September of 2019 to receive treatment from UTMB Galveston where he was prescribed Sulfasalazine which finally provided him

---

[4]Plaintiff provided no citation.

5

relief.

With respect to Defendant Harden, Plaintiff testified she worked for UTMB in the mental health department.  Prior to April 17, 2019, Plaintiff testified he complained to Defendant Harden repeatedly about his mental health concerns and his inability to pursue his habeas petition without proper treatment.  Plaintiff alleged that he filed an I-60 to Defendant Harden who never responded.

In the early morning hours of April 17, 2019 in Four Building, Plaintiff testified he had interaction with Defendant Harden relating to an incident he had during visitation where he was written a disciplinary case.  Plaintiff testified that Defendant Harden told him she could not do anything to help him.  Plaintiff stated he turned in a suicide note to an inmate Bennefield and that he made Defendant Harden aware of the suicide note who in turn informed the authorities.  At approximately 2:00 a.m., Plaintiff testified he cut his writs and was put on suicide watch.  He was escorted to medical, given liquid stitches and placed on suicide watch by the treating nurse.  Plaintiff alleged he was depressed, stressed out and feeling hopeless and that ultimately Defendant Harden came by to visit him.  He stated he does not recall talking to her but when she walked off he recalled her telling an officer to put him back in general population.  Plaintiff testified he was taken off suicide watch and moved to 3 Building where he saw Defendant Williams who told him, "you need to pay who you owe."  Plaintiff did not know what that meant.

Plaintiff was taken to medical again after a complaint and saw Defendant Harden.  According to Plaintiff, Harden asked what was going on and either Defendant Williams or Officer Villafuerta said something to the effect that "he is going to finish what he started."  Harden reportedly stated in response, he "ain't going to do nothing" and the treating nurse said good, she was ready to go home.  According to Plaintiff, Harden released him back to security in Eleven Building and he then tried

6

to hang himself.

After he attempted to hang himself, Plaintiff said he saw Defendant Harden on his way to Skyview who said she got him some help and hopefully he would use it.  Plaintiff testified that since that time, Defendant Harden has told him he is the biggest "con man" she knew.

Plaintiff next testified that Defendant Freeman is the mental health clinician at the Polunksy Unit but that Plaintiff hardly ever saw him despite Defendant Freeman documenting several visits. Plaintiff testified it was his belief that Defendant Freeman treated him inhumanely.  Plaintiff confirmed he was prescribed medicine for his mental health needs and that they were changed as one of the prescriptions was bothering Plaintiff's stomach.  Plaintiff could not say who specifically prescribed the medicine.  He stated Defendant Freeman made fun of him stating he was a black man trapped in a white man's body.  Plaintiff alleged that Defendant Freeman told him to "finish it" when he was on his way to a disciplinary hearing before being taken to Skyview.  Plaintiff testified Warden Perez was also there and asked Plaintiff to promise he wouldn't do anything and he was going to get him help.  Once the Warden left, Plaintiff alleges it was then Defendant Freeman told him to "finish it."  Plaintiff's complaints regarding Defendants Williams and Villafuerta are that they should have intervened when Defendant Harden ordered him returned to security after being placed on suicide watch.

Plaintiff stated he listed Defendant Stephenson as a Defendant as she failed to properly investigate and process his grievances and it was a barrier to him receiving proper medical treatment.

<u>Standard of Review</u>

Pursuant to 28 U.S.C. § 1915A, the court must review Plaintiff's complaint and dismiss it, or any portion of it, if it is frivolous, malicious, or false to state a claim upon which relief may be

granted, or if it seeks monetary relief from a Defendant who is immune from such relief.

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id*. at 327. A claim fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state a constitutional claim for relief under § 1983, a plaintiff must allege a right secured by the Constitution or the laws of the United States and a violation of that right by one or more state actors. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994). To be a state actor subject to liability under § 1983, the defendant must act "under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia." 42 U.S.C. § 1983. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

<u>Analysis</u>

*1. Americans with Disability Act and Rehabilitation Act*

    *A. Individual Capacity*

The ADA is a federal anti-discrimination statute intended to eliminate discrimination against individuals with disabilities. *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir. 2002). Title II of the ADA authorizes suits by private citizens for money damages against public

entities that violate 42 U.S.C. § 12132.  The rights and remedies available under the ADA are almost

duplicative of those available under the RA.  *See* 42 U.S.C. § 12133 (incorporating by reference 29

U.S.C. § 794(a); *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2005).[5]  Title II

of the ADA applies to state prison facilities and state prison services.  *See Pennsylvania Dep't of

Corrections v. Yeskey*, 524 U.S. 2006, 210 (1998).

Although Title II provides disabled persons redress for discrimination by a public entity, it

does not, by statutory definition, include redress against individuals.   42 U.S.C. § 12131(1).

Employing a limited construction of the statutory definition of public entity, courts that have

addressed the question have concluded that individual defendants cannot be held liable for violations

of Title II of the ADA.  *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 & n. 8 (8th Cir. 1999)

(en banc); *Arit v. Missouri Dep't of Corrections*, 229 F.Supp.2d 938, 942 (E.D. Mo. 2002); *Lewis

v. New Mexico Dept' of Health*, 94 F.Supp.2d 1217, 1230 (D.N.M. 2000); *Calloway v. Glassboro

Dept' of Police*, 89 F.Supp.2d 543, 557 (D.N.J. 2000); *see also Joseph v. Port of New Orleans*, Civil

Action No. 99-1622, 2002 WL 342424, at *10 (E.D. La. March 4, 2002) (finding that "[t]he majority

of courts that have addressed the issue have held that the ADA does not permit claims against

persons in their individual capacities"), *aff'd*, No. 02-30297, 2002 WL 31933280 (5th Cir. Dec. 27,

2002).  Although the Fifth Circuit has not expressly addressed the question of individual liability

under Title II of the ADA, it has recognized that a plaintiff cannot sue an individual under the

Rehabilitation Act, 29 U.S.C. § 794(a), which provides a comprehensive remedial framework and

---

[5]The Court will consider the plaintiff's ADA and RA claims together, because the two statutes provide
parallel remedies.  *See Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000); 42 U.S.C. § 12133.  "The language in
the ADA generally tracks the language set forth in the RA.  In fact, the ADA expressly provides that "the remedies,
procedures and rights' available under the RA are also accessible under the ADA."  *Delano-Pyle v. Victoria County*,
Tex., 302 F.3d 567, 574 (5th Cir. 2002) (quoting 42 U.S.C. § 12133 (1995)).

enforcement provisions similar to the ADA. *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999). Moreover, punitive damages are unavailable under the ADA. *Barnes v. Gorman*, 536 U.S. 181, 189-90 (2002). Plaintiff's ADA and RA claims against all the Defendants in their individual capacities, to the extent they are asserted, should be dismissed for lack of subject matter jurisdiction.

   *B.  Official Capacity*

   The ADA reads as follows, "[s]ubject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. The Act specifically provides that the remedies, procedures, and rights set forth in Section 505 of the RA, shall be the remedies, procedures, and rights this title provides to any person alleging discrimination because of a disability in violation of Section 12132. 29 U.S.C. § 794; 42 U.S.C. § 12133. The RA states, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

   To state a claim under the ADA or RA, plaintiff must show that (1) he is qualified individual; (2) who was excluded from participation in or denied the benefits of services, programs, or activities of a public entity; and (3) that the exclusion, denial, or discrimination was because of his disability. *Blanks v. Southwestern Bell Communications*, 310 F.3d 398, 400 (5th Cir. 2002). A "plaintiff asserting a private cause of action for violations under the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination." *Id*. Prison officials need not anticipate an inmate's unarticulated need for accommodation or to offer an accommodation *sua*

10

*sponte*; the inmate must provide evidence of his disability and the severity of the physical limitations resulting from it, and he must request an accommodation.

A disability is "physical impairment that substantially limits one or more major life activities; . . . a record of such an impairment; or . . . being regard[ed] as having such an impairment." *Haralson v. Campuzano*, 356 F. App'x 692, 697-98 (5th Cir. 2009) (citing 42 U.S.C. § 12102(1)). Major life activities are "those activities that are of central importance to most people's every day lives." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).

With respect to his ADA claims, Plaintiff does not allege that he has in fact, been diagnosed with a qualifying disability.  Plaintiff's testimony is conclusory and assumes his mental illness diagnoses (the specific diagnoses which are still unclear) qualify him as disabled.  Regardless, and to the extent Plaintiff has a qualifying disability, Plaintiff fails to allege any facts suggesting the Defendants TDCJ and/or UTMB had the subjective intent to discriminate against him because of his alleged disability.  Plaintiff's core complaint is that he disagrees or is dissatisfied with his treatment for his medical and mental health conditions.  The ADA is not violated, however, by "a prison simply failing to attend to the medical needs of its disabled prisoners." *Nottingham v. Richardson*, 499 F. App'x 368, 377  (Dec. 4, 2012) (not designated for publication) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (8th Cir. 1996) and *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n. 14 (1999) ("We do not in this opinion hold that the ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'")).  As Plaintiff does not state a claim under the ADA or RA, this court will not "strain to find inferences favorable to plaintiff" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins.*

*Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotation marks and citations omitted). Plaintiff's ADA and RA claims should be dismissed for failure to state a claim upon which relief may be granted.

### 2.  *42 U.S.C. § 1983*

#### A.  *Official Capacity Claims*

Plaintiff seeks monetary damages from UTMB, TDCJ, and the individual defendants in their official capacities.  These claims are barred by Eleventh Amendment immunity.

The Eleventh Amendment to the federal Constitution bars such claims against a state unless the state has waived immunity or Congress has abrogated immunity pursuant to its power under section 5 of the Fourteenth Amendment.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  42 U.S.C. § 1983 does not override Eleventh Amendment immunity.  *Id*. (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979)).  Neither Congress nor the State of Texas has waived Eleventh Amendment immunity under § 1983.

The Fifth Circuit has repeatedly held that the Eleventh Amendment bars plaintiffs from recovering monetary damages in a § 1983 claim from TDCJ and/or UTMB officers in their official capacity.  *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998); *Aguilar v. TDCJ-CID*, 160 F.3d 1052, 1054 (5th Cir. 1998).  Likewise, Plaintiff's claims for monetary damages against UTMB and TDCJ are barred by the Eleventh Amendment because both are agencies of the State of Texas.  *Lewis v. UTMB*, 665 F.3d 625, 630 (5th Cir. 2011).

Plaintiff's claims for monetary damages against UTMB, TDCJ and the individual Defendants in their official capacities should be dismissed for lack of subject matter jurisdiction.

B. *Individual Capacity Claim*

i. *Defendant Lindley*

Plaintiff's sole complaint against Defendant Lindley is that she did not timely schedule his medical appointments to UTMB Galveston. Plaintiff offered no more specifics regarding this claim. At best, this is a claim for negligence which is insufficient to support a claim for deliberate indifference under the Eighth Amendment. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238) (neither "negligence, neglect or medical malpractice" give rise to a § 1983 cause of action). Plaintiff's claims against Defendant Lindley should be dismissed for failure to state a claim and as frivolous.

ii. *Defendants Stephenson & Butcher*

Plaintiff contends Defendant Stephenson failed to properly investigate and process his grievances which prevented him from receiving proper medical treatment. Plaintiff alleges Defendant Stephenson interfered in his ability to get treatment by denying his grievances saying there were no grievable issues. In addition, he complains Defendant Butcher failed to respond to his grievances. Finally, he complains that because of his mental and medical issues, he could not "get access to court" to file his state application for writ of habeas corpus.

Prisoners have liberty interests only in "freedom[s] from restraint . . . impos[ing] *atypical* and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Geiger v. Jowers*, 404, F.3d 371, 373-74 (5th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Prisoners do not have a federally protected liberty interest in having grievances addressed and resolved to their satisfaction. *See id.* at 374 (holding that prisoner did not have liberty interest of the kind protected by Due Process Clause of Fourteenth Amendment, in having grievance against

13

mail room and security staff of prison resolved to his satisfaction for allegedly withholding and ultimately losing some of his mail).  Moreover, a prisoner does not have a constitutional entitlement to an adequate grievance procedure.  *See, e.g., Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that there is no constitutional right to participate in grievance procedures); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430-31 (7th Cir. 1996) (holding inmates do not have constitutional right to adequate grievance procedure; any right to inmate grievance procedure is procedural, not substantive, right and, thus, state's inmate grievance procedures do not give rise to liberty interest protected by due process clause); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (holding inmates do not have a constitutional right to participate in grievance procedures).  Although an adequate grievance procedure is a condition precedent to filing a suit arising under § 1983, *see* 42 U.S.C. § 1997e(a), its ineffectiveness or altogether absence does not give rise to a constitutional claim.  Thus, any alleged violation of the grievance procedure does not amount to a constitutional violation and this claim should be dismissed for failure to state a claim and as frivolous.

*iii.  Defendant Geddis*

Plaintiff complains that Dr. Geddis did not treat his colitis effectively.  Plaintiff concedes he received medication as prescribed by Dr. Geddis but believed the medication was ineffective in treating his symptoms.  Although less than clear, it appears Plaintiff is alleging Dr. Geddis failed to diagnose Plaintiff with colitis and it was not until Plaintiff went to UTMB that he was properly treated.  As with Defendant Lindley, this is, at best, a claim for negligence which is insufficient to support a claim for deliberate indifference under the Eighth Amendment. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238) (neither "negligence,

14

Case 9:20-cv-00020-MAC-CLS   Document 39   Filed 08/09/22   Page 15 of 20 PageID #:  355

neglect or medical malpractice" give rise to a § 1983 cause of action).  Plaintiff's claims against Defendant Geddis should be dismissed for failure to state a claim and as frivolous.

### iv.  Defendant Harden

Plaintiff's complaint against Defendant Hardin is that she was deliberately indifferent when she ordered him be put back in general population after his first suicide attempt on April 17, 2019. According to Plaintiff, Defendants Williams or Villafuerta commented that Plaintiff was going to finish what he started and Defendant Harden commented he "ain't going to do nothing" and released him back to security.  Once back on 11 Building, Plaintiff tried to hang himself.

To show an official was deliberately indifferent, a plaintiff must demonstrate that the official is aware that an "inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  In the present case, Plaintiff has sufficiently alleged a claim for deliberate indifference as he contends Defendant Harden was aware Plaintiff faced a substantial risk of serious harm when Plaintiff had already recently attempted suicide and then she disregarded that risk when she took him off of suicide watch in a way that goes beyond negligence.  Plaintiff's claim against Defendant Harden should proceed.

### v.  Defendant Freeman

Plaintiff's allegations against Defendant Freeman appear to be that he did not treat him adequately.  Plaintiff testified he was unsure if Defendant Freeman prescribed him medication. Plaintiff alleges he only saw Defendant Freeman one time in February of 2019 where Plaintiff complained the medication he was taking was hurting his stomach and Defendant Freeman commented that Plaintiff was "a black man trapped in a white man's body."  Plaintiff contends

15

Defendant Freeman falsely documented visits with Plaintiff.  Plaintiff also alleges that Defendant Freeman told Plaintiff to "finish it" while he was on his way to Skyview, after his two attempts at suicide.

While the comments made by Defendant Freeman are concerning, the allegations before the court are insufficient to allege a claim of deliberate indifference to a serious medical need.  Plaintiff has simply failed to put forth allegations that Defendant Freeman was aware that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  *Farmer,* 511 U.S. at 847.  Indeed, Plaintiff was being transferred to Skyview for treatment when the comments were made.  Plaintiff's claims against Defendant Freeman should be dismissed for failure to state a claim and as frivolous.

> *vi.  Defendants Villafuerta and Williams*

Plaintiff complains Defendants Villafuerta and Williams, both security officers, should have intervened when Defendant Harden ordered Plaintiff back to general population.  Plaintiff states they returned him to 11 Building and placed him in a single cell with his boxers and he ultimately tried to hang himself.  According to Plaintiff, both Defendants Villafuerta and Williams informed medical what was going on and it was medical who did not respond appropriately.  These allegations are insufficient to support a claim of deliberate indifference as Plaintiff concedes both Defendants took actions to warn medical about Plaintiff's mental health struggles and it was medical who failed to act and ordered him back to general population.  Plaintiff's claims against Defendants Villafuerta and Williams should be dismissed for failure to state a claim and as frivolous.

vii. *Violations of TDCJ Policy/Texas Administrative Code*

Much of Plaintiff's complaints concerning violations of policy are couched in terms of violations of the Texas Administrative Code.  Plaintiff does not specify which individual defendants he claims violated TDCJ policy or the Texas Administrative Code.  Regardless, it is well settled that a prison official's failure to follow state regulations does not establish a constitutional violation.  *See Jackson v. Cain*, 864 F.2d 1235, 1251-51 (5th Cir. 1989). The Fifth Circuit has explained that in order to maintain a claim under § 1983, a plaintiff must show he has been deprived of a right secured by the Constitution, laws, or treaties of the United States by a person acting under color of state law. *Daniel v. Ferguson*, 839 F.2d 1124 (5th Cir. 1988).  A violation of the Texas Administrative Code is not a violation of the Constitution or laws of the United States.  *See, e.g., Walker v. Old American County Mutual Fire Ins. Co.*, slip op. no. 4:12-CV-2581, 2012 WL 5818227 (S.D. Tex. Nov. 14, 2012) (stating that claims for violations of the Texas Administrative Code do not implicate federal law in anyway); *Tweedy v. Boggs*, 983 F.2d 232, 1993 WL 4507 (5th Cir. Jan. 5, 1993) (stating that a violation of the Texas Jail Standards does not itself amount to a constitutional deprivation).  To the extent Plaintiff relies on alleged violations of the Texas Administrative Code, he has not set out a viable claim under the Constitution or laws of the United States.

Plaintiff's claim that the Defendants failed to follow TDCJ policy also fails.  Fifth Circuit case law is clear that a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met.  *Giovanni v. Lynn*, 48 F.3d 908, 912-13 (5th Cir.), *cert. denied*, 516 U.S. 860 (1995); *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994).  The mere failure to comply with prison rules and regulations does not, without more, give rise to a constitutional violation.  *Meyers v. Klevenhagen*,

97 F.3d 91, 94 (5th Cir. 1996).  Here, Plaintiff cannot even identify a specific TDCJ policy that he believes was violated.  Plaintiff's claims are conclusory and should be dismissed for failure to state a claim and as frivolous.

*viii.  Denial of Access to Courts*

Plaintiff asserts unspecified Defendants denied him access to courts when they failed to properly medicate him.  Plaintiff, in essence, argues that because his mental illness was not properly treated, he was unable to file his state application for writ of habeas corpus.  It is clear that prisoners do have a constitutionally protected right of access to the courts.  *See Lewis v. Casey*,  518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817 (1977).  "This right of access for prisoners is not unlimited, however; rather, it encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.'" *Johnson v. Rodriguez*, 110 F.3d 299, 310-11 (5th Cir. 1997) (quoting *Lewis*, 518 U.S. at 356).  In *Lewis*, the Supreme Court clarified the decision in *Bounds* and stated the following:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.

To establish a violation of the right to access to the courts, a prisoner must show that the conditions at the facility failed to provide him with a reasonable opportunity to research his claims and failed to assist him in preparing meaningful legal papers.  *Bounds*, 430 U.S. at 828.  Additionally, prisoners must demonstrate actual injury in order to show that their right of access to

18

the courts was denied.  *See Lewis*, 518 U.S. at 348-52.  Plaintiff, here, however, cannot show that the conditions deprived him of a reasonable opportunity to research his claims or failed to assist him in preparing meaningful legal papers, nor can Plaintiff show an injury. An independent review of the Texas Court of Criminal Appeals website and CM/ECF reveals Plaintiff filed a writ of mandamus with the Texas Court of Criminal Appeals on June 1, 2020 and then a federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on September 21, 2020.  *See In re Crawford*, WR-91,274-01;[6] *see also Crawford v. Director*, Civil Action No. 4:21-CV-0061.[7] Plaintiff also filed the current civil rights action without any impediment and he has failed to set forth any facts establishing that the Defendants' actions prevented him from preparing or filing any legal papers.  Plaintiff's claim for denial of access of courts should be denied for failure to state a claim and as frivolous.

    *ix.  Retaliation*

    "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).  "Mere conclusory allegations of retaliation are insufficient." *Id*. at 325.  A prisoner must either "product direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)).  The relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citing *Woods v.*

---

[6]https://search.txcourts.gov/Case.aspx?cn=WR-91,274-01&coa=coscca

[7]The writ of mandamus was dismissed as it was not filed in the district court first.  The federal writ of habeas corpus was dismissed for want of prosecution as Plaintiff failed to pay the $5.00 filing fee and/or submit a proper application to proceed *in forma pauperis*.

*Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)).  While Plaintiff stated it was his intent to amend his complaint to add a claim for retaliation, Plaintiff offered no specifics as to which individual Defendant engaged in retaliation nor any factual detail supporting such a claim.  Plaintiff's claim of retaliation should be dismissed for failure to state a claim and as frivolous.

<u>Recommendation</u>

Plaintiff's claims against all the Defendants in their individual and official capacities, except for Defendant Harden, should be dismissed for failure to state a claim and as frivolous.  Plaintiff's claims against Defendant Harden in her individual capacity should proceed.

<u>Objections</u>

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings of facts*,* conclusions of law and recommendations contained within this report within fourteen (14) days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error.  *Douglass v. United Servs.  Auto. Assoc'n.,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**SIGNED this the 9th day of August, 2022.**

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE

20