IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| MICHAEL CRAWFORD | § | |
| VS. | § | CIVIL ACTION NO. 9:20-CV-20 |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, *et al.*, | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Michael Crawford, an inmate currently confined at the Hughes Unit with the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se* and *in forma pauperis,* filed the above-referenced civil rights action pursuant 42 U.S.C. § 1983 against Defendant Jeanette Harden.

The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Background

Plaintiff filed this suit in February 2020, against several Defendants. After several attempts to replead Plaintiff's causes of action, the undersigned conducted a *Spears* hearing pursuant to *Spears v. McCotter*, 766 F.2d 169 (5th Cir. 1985) on April 26, 2022 (doc. # 34). Plaintiff's claims against all the Defendants, except for Defendant Harden, were dismissed on October 21, 2022 for failure to state a claim and as frivolous (doc. #s 43 & 44).

As to Defendant Harden, Plaintiff generally alleged she was deliberately indifferent to his serious medical needs when she ordered Plaintiff be put back in general population after his first

suicide attempt on April 17, 2019. According to Plaintiff's testimony during the *Spears* Hearing, Defendant Williams or Villafuerta commented that Plaintiff was going to finish what he started and Defendant Harden commented he "ain't going to do nothing" and released him back to security. Once back on 11 Building, Plaintiff testified he tried to hang himself.

Finding Plaintiff sufficiently alleged a claim for deliberate indifference against Defendant Harden, the undersigned ordered Defendant Harden to answer or otherwise plead on October 24, 2022 (doc. # 45). Defendant Harden filed an Answer on November 11, 2022 (doc. # 53) and a Motion for Summary Judgment on January 6, 2023 (doc. # 62). This Report and Recommendation considers the Motion for Summary Judgment. Despite more than ample time to file a response, Plaintiff has failed to do so.

Defendant Harden's Motion for Summary Judgment

Defendant Harden argues (1) that there is no genuine dispute of material fact that Defendant Harden was aware of facts which would allow her to infer a substantial risk of serious harm to Plaintiff, and that Defendant Harden then inferred that risk, and (2) Plaintiff has failed to overcome her entitlement to qualified immunity. Defendant Harden relies on the following evidence in support of her Motion for Summary Judgment:

**Exhibit A**: Affidavit of Dr. Lluneres with relevant medical records of Michael Crawford (TDCJ No. 00207480) with accompanying affidavit (Bates stamped Crawford 0001-070); and

**Exhibit B**: Relevant grievance records of Michael Crawford (TDCJ No. 02207480) with accompanying affidavit (Bates stamped Crawford 0071-0269).

<u>Undisputed Facts</u>

Defendant Harden concedes the following facts are undisputed:

1. Crawford was a TDCJ inmate housed at the Polunsky Unit in West Livingston, Texas at all relevant times;

2. At the time of the events giving rise to this suit, Defendant Harden was employed by the University of Texas Medical Branch ("UTMB") at the Polunsky Unit as a mental health clinician;

3. During the relevant time period, Plaintiff had an active psychotropic prescription to treat his Post Traumatic Stress Disorder ("PTSD");

4. On April 17, 2019, Plaintiff made two suicide attempts and was seen by medical staff at the Polunsky Unit multiple times; and

5. Defendant Harden continued to assess Plaintiff for mental health concerns until his transfer off the Polunsky Unit.

<u>Standards of Review</u>

*A. Motion for Summary Judgment Under FRCP 56*

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and one party is entitled to judgment as a matter of law. FED. R. CIV. P. § 56(a). Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988). Any controverted evidence must be viewed

in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (citation omitted). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. *Celotex*, 477 U.S. at 322-23; *ContiCommodity Servs., Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted). Furthermore, there must be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," unsubstantiated assertions, or the presence of a "scintilla of evidence" is not enough to create a real controversy regarding material facts. *See, e.g., Lujan*, 497 U.S. at 902; *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

B. *Qualified Immunity*

Defendant Harden has invoked the defense of qualified immunity, which protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"A public official is entitled to qualified immunity unless the plaintiff demonstrates (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Waganfeald v. Gusman*, 674 F.3d 475, 483 (5th Cir. 2012) (quoting *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011)).

After an official has asserted the defense of qualified immunity, the burden is on the plaintiff to "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *see also Voss v. Goode*, 954 F.3d 234, 238 (5th Cir. 2020) ("A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.") (quoting *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc)).

A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017).

Discussion

Plaintiff alleges Defendant Harden violated his constitutional rights under the Eighth Amendment by denying him adequate medical or mental health care at the Polunsky Unit and that

he injured himself as a result of her failure to protect him from self-harm.[1] Specifically, Plaintiff complains that Defendant Harden placed him back in general population despite threats of suicide and a prior unsuccessful attempt in cutting his wrists, resulting in another failed attempt by hanging.

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under section 1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official acts with deliberate indifference only if he "knows that an inmate faces a substantial risk of serious bodily harm" and he "disregards that risk by failing to take reasonable measures to abate it." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994))). Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. *Gobert*, 463 F.3d at 346; *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A showing of deliberate indifference requires the prisoner to establish that

---

[1] As it relates to Plaintiff's request for appointment of counsel in his habeas proceeding, the undersigned liberally construes this is a denial of access to courts claim. Plaintiff, at times, appeared to argue the denial of medical care interfered in his ability to file his state application for writ of habeas corpus. Plaintiff, however, cannot show an actual injury. *Lewis v. Casey*, 518 U.S. 343, 348 (1996) (An inmate alleging a denial of access to courts must show that he suffered actual injury from the violation). "To show actual injury, an inmate must allege 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" *Id*. Here, despite Plaintiff's allegations of maltreatment, Plaintiff was still able to file this civil rights action and also testified that he filed a notice with the Fifth Circuit Court of Appeals. Moreover, during the same time period, Plaintiff filed a federal writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Crawford v. TDCJ*, 4:21-CV-61. The latter petition was ultimately dismissed for want of prosecution for failure to pay the $5.00 filing fee. Finally, as indicated by Plaintiff, state court records reveal he filed a writ of mandamus on June 1, 2020, which was denied on July 29, 2020. *Ex parte Crawford*, WR-91,274-01. *See* https://search.txcourts.gov/CaseSearch.aspx?coa=coscca&s=c.

prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.*; *see also Gobert*, 463 F.3d at 346. Deliberate indifference "is an extremely high standard to meet." *Id*.

In cases involving inmate suicide, a plaintiff must plead more than "gross negligence in treating [the inmate's] mental health problems." *Young v. McCain*, 760 F. App'x 251, 256 (5th Cir. 2019). Because "suicide is inherently difficult to predict, particularly in the depressing prison setting . . . an incorrect diagnosis regarding the genuineness of a suicide threat does not amount to deliberate indifference." *Id*. (internal citation and quotation marks omitted). Nor does the failure to properly implement "adequate suicide prevention protocols" amount to deliberate indifference. *Taylor v. Barkes*, 575 U.S. 822 (2015); *see also Young*, 760 F. App'x at 257 (noting that "disagreement with a diagnostic measure" does not allege deliberate indifference). Indeed, the Fifth Circuit has observed that, "while . . . the law is clearly established that jailers must take measures to prevent inmate suicides once they know of the risk, we cannot say that the law is established with any clarity as to what those measures must be." *Hyatt v. Thomas*, 843 F.3d 172, 177–78 (5th Cir. 2016) (ellipsis in original).

Accordingly, the Fifth Circuit has held that the failure to properly diagnose or insufficiently treat an inmate's mental condition does not generally rise to the level of deliberate indifference. *See Young*, 760 F. App'x at 253, 256–57 (finding no deliberate indifference where plaintiff alleged defendants were aware he was "suicidal;" downgraded him from extreme to standard suicide watch, "which allowed him to harm himself;" and permitted a psychiatrist to meet with him "only briefly via videoconferencing"); *Domino*, 239 F.3d at 755–56 (finding no deliberate indifference where

evidence showed defendants "were monitoring [the inmate's] condition," had "scheduled counseling sessions" with him, and the inmate's threat of suicide was "said all the time [and] wasn't new"); *Hyatt*, 843 F.3d at 179–80 (finding no deliberate indifference where evidence showed defendant was aware of substantial risk inmate would attempt suicide but "responded reasonably" by withholding the most obvious means of self-harm, placing him under video surveillance, and informing relieving officer of risk). In contrast, in *Hare v. City of Corinth, MS*, the Fifth Circuit held that the plaintiff properly alleged deliberate indifference by "consistently alleg[ing] that the individual defendants knew, or should have known, that [his daughter, an inmate] was exhibiting suicidal tendencies" and yet placed her in "an isolated cell, without removing the blanket," which she used to hang herself. 135 F.3d 320, 326 (5th Cir. 1998).

Here, the competent summary judgment evidence shows that Plaintiff suffers from Post Traumatic Stress Disorder ("PTSD"), first observed in October of 2018, and was prescribed medication for treatment of this conditions. Bates Stamp, Crawford, pg. 0215.[2] The records indicate Plaintiff is not compliant in taking his medication, refuses to wait in the pill line, and his overall compliance with treatment is chronically low. Bates Stamp, Crawford, pgs. 33 & 41. The records confirm that Plaintiff made threats of suicide in January of 2019 and April of 2019. Bates Stamp, Crawford, pgs. 17-22, 43-60. As a mental health provider on the unit, Defendant Harden had several interactions with Plaintiff after his threats of suicide. After each visit, Defendant Harden designated Plaintiff with a baseline risk for suicide. *Id*. A designation of baseline means the mental health provider identifies some risk factors exist, but without identifiable suicide ideation or expressed

---

[2] Plaintiff was diagnosed with gender dysphoria in 2022, after the incident made the bases of this suit. Plaintiff was also prescribed medication for treatment of this condition.

suicidal intent. UTMB CMC Mental Health Services Departmental Procedure on Suicide Prevention, Bates Stamp, Crawford, pg. 23. With that designation, therapeutic interventions are offered to enhance patient's coping skills to effectively manage stressors. *Id*.

With respect to Plaintiff's attempts at suicide in April of 2019, specifically, the medical records establish that Plaintiff was placed on crisis management[3] after he attempted to slit his wrists in the early morning hours of April 17, 2019.[4] Bates Stamp, Crawford, pgs. 44-60. As there were no beds available at either crisis management facility, Plaintiff was released back to security, but under constant and direct observation ("CDO") protocol.[5] *Id*. at pg. 45.

Plaintiff was evaluated two times by Defendant Harden in the later morning hours of April 17, 2019, after this first incident. *Id*. at pgs. 49- During the first visit, Harden saw Plaintiff as a walk in. *Id*. at pg. 49. She noted Plaintiff was venting about mental health medication issues, medical issues and recent disciplinary cases. *Id*. Her notes indicate Plaintiff was focused primarily on his disciplinary cases and he spoke with "high anxiety." *Id.* Defendant Harden provided "supportive

---

[3]Crisis Management refers to the status of an inmate who is determined to be at imminent risk of significant self-injury or suicide. The inmate is to be placed in a specially prepared and approved cell. Inmates in Crisis Management are observed at least every fifteen minutes by medical/MH staff or a correctional officer. UTMB CMC Mental Health Services Departmental Procedure on Suicide Prevention, Bates Stamp, Crawford, pg. 23.

[4]The attending nurse noted two small lacerations on Plaintiff's left wrist, and that he was not in acute distress. *Id*. at pg. 45. The attending physician provided verbal orders to the nursing staff who applied Dermabond to the lacerations, administered Ibuprofen, and initiated crisis management. *Id*.

[5]Constant and Direct Observation refers to the status of an inmate who is determined to require transport to Crisis Management and such transport is pending. In CDO, the inmate is constantly observed by an officer who is close enough and has the means to intervene to prevent self-injury. Note: this status is not ordered by providers. Upon a qualified mental health professional ("QMHP") issuing a referral for Crisis Management and until the inmate can be transported to Crisis Management, this is a function provided by security. If the inmate is deemed not in need of transfer by the QMHP, security discontinues CDO Status. UTMB CMC Mental Health Services Departmental Procedure on Suicide Prevention, Bates Stamp, Crawford, pg. 23.

counsel," and advised Plaintiff that the mental health professionals had nothing to do with his disciplinary cases. *Id*. Plaintiff appeared frustrated that mental health professional did not receive notice of his disciplinary cases. *Id*. Defendant Harden advised Plaintiff of the policy as it related to disciplinary cases, noted Plaintiff was stable with no reports of self-harm, and recommended he continue on the mental health caseload. *Id*.

A few hours later, Defendant Harden visited Plaintiff at his cell. *Id*. Her notes indicate "he was mute and would not engage with her." *Id*. at pg. 52. Finding again that Plaintiff was at a baseline risk for suicide, Defendant Harden released Plaintiff to security for appropriate housing and explained the access to care procedures. *Id*. Plaintiff was again continued on the mental health caseload. *Id*.

That afternoon, the records show that Plaintiff threatened to hang himself during a pre-restrictive housing health evaluation. *Id*. at pgs. 54-57. The attending nurse referred Plaintiff to mental health and he was escorted to medical. *Id*. Harden noted Plaintiff was sitting in a chair with his head down, and presented with manipulative behavior, as he would not look at her. *Id*. at pg. 60. Harden documented that it was important to note that Plaintiff had been served two more disciplinary cases, that he did not present with psychosis, "nor is he frankly suicidal." *Id*. It was Harden's belief that Plaintiff was "location seeking" in an effort to avoid disciplinary cases. *Id*. Finding Plaintiff again to be at a baseline risk for suicide, Plaintiff was released to security. *Id*.

On the evening of April 17, 2019, medical staff responded to a second emergency call as Plaintiff attempted to hang himself in his cell. *Id* at pgs. 163-165; 224-228; . Plaintiff received medical evaluation and was transported to an outside hospital via EMS for further stabilization and evaluation for potential head injury/trauma. *Id*. Plaintiff was treated for a contusion, and upon his

return to the unit the following day, he received treatment for the cuts he had inflicted to himself the prior morning. *Id*. at pgs. 61-63.  The attending nurse referred Plaintiff to mental health and he was seen by Anthony Freeman, another mental health provider on the unit. *Id*. at pgs.64-67.  Plaintiff was non-responsive at first, but when Mr. Freeman went to leave, he began to talk loudly, stating he was going to try and kill himself again. *Id*.  Mr. Freeman noted Plaintiff was having issues at the unit and is attempting to be transferred off. *Id*.  Specifically, Mr. Freeman noted Plaintiff "admits current plan for suicide but presents as demanding and disingenous." *Id*.  Finding Plaintiff at a baseline risk for suicide, Plaintiff was returned to security and released from CDO. *Id*.

Defendant Harden saw Plaintiff later the same day, noting Plaintiff stated, "thank you Ms. Harden . . . I'll make the best of it." *Id*. at pgs. 68-70.  Defendant Harden's notes indicate her belief that Plaintiff continued to act out in an effort to control his environment, but since he recently attempted a "hanging gesture," she placed him on a waiting list to transfer to one of the crisis management centers. *Id*.  Plaintiff was ultimately transferred to Skyview on April 19, 2019, and received treatment until April 23, 2019, when he was discharged back to Polunsky. *Id*. at pgs. 177-180.  Upon his release to Polunsky, it was noted Plaintiff was stable and was to return to an outpatient setting. *Id*.

As outlined above, Defendant Harden consistently designated Plaintiff as at a baseline risk for suicide after each encounter with him, believing he was motivated by location seeking and avoiding disciplinary hearings.  The competent summary judgment evidence establishes she did not infer a substantial risk of serious harm to Plaintiff.  The competent summary judgment evidence also shows that Defendant Harden regularly responded to Plaintiff's requests for intervention and she assessed those concerns.  Plaintiff must plead more than gross negligence in treating his mental

11

health problems. *Young*, 760 F. App'x at 256 (5th Cir. 2019). As Plaintiff has failed to establish a genuine dispute of material fact as to deliberate indifference, Plaintiff has not established a constitutional violation. Defendant Harden's entitlement to qualified immunity remains intact.

## Recommendation

Defendant Hardens' Motion for Summary Judgment should be granted and this case should be dismissed with prejudice.

## Objections

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen (14) days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Assoc'n.,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**SIGNED this the 22nd day of February, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE